DAVID M. POITRAS, APC (CA Bar No. 141309)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567
Email: dpoitras@jmbm.com

PAMELA C. JACKSON (CA Bar No. 87502)
PAMELA C. JACKSON, INC.
409 Boyd Street
Vacaville, California 95688
Telephone: (707) 446-2333
Facsimile: (707) 446-2393
Email: jackson@pcjlawinc.com

Attorneys for Moving Party,
Duke Partners II, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>JAYNE MARGARET CARNEY,<br><br>Debtor. | CASE NO. 13-bk-45872-RLE<br><br>RS NO. DMP-1<br><br>Chapter 13<br><br>Date: September 27, 2017<br>Time: 1:30 p.m.<br>Ctrm: 201<br>Place: 1300 Clay Street<br>Oakland, CA 94612<br>Judge: The Hon. Roger L. Efremsky |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DUKE PARTNERS II, LLC'S MOTION TO ANNUL THE AUTOMATIC STAY, OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

**JURISDICTION**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b).

2.  Venue for this matter and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

61295139v1

# BACKGROUND

3. The Property at issue is generally described as 9527 Granada Avenue, Oakland, California 94605 (the "Property"). The Property is residential property. *See ¶ 3 of Crandall Decl.*

4. Duke Partners II, LLC, the Moving Party herein ("Duke" or "Movant") is the owner of the Property. The foreclosure process started in November 2015. The foreclosure sale was originally scheduled for April 21, 2016. Duke purchased the Property at a duly noticed foreclosure sale conducted on October 27, 2016 and a Trustee's Deed Upon Sale was subsequently recorded on January 26, 2017. *See ¶ 4 of Crandall Decl.*

5. An individual by the name of Anthony A. Malfatti is the former owner of the Property and the trustor under the foreclosed deed of trust (the "Prior Owner"). *See ¶ 5 of Crandall Decl.*

6. The Prior Owner filed a chapter 13 case on December 28, 2015, which case was dismissed on February 9, 2016. *See ¶ 6 of Crandall Decl.*

7. On March 23, 2016, the Prior Owner then filed a State Court action in the Alameda County Superior Court seeking a preliminary injunction to stop the foreclosure sale. The request was denied by order entered April 18, 2016. *See ¶ 7 of Crandall Decl.*

8. The Prior Owner then embarked upon a series of transferring fractionalized interests in the Property to three separate debtors with bankruptcy cases already pending in order to "hi-jack" the automatic stay in those cases. *See,* In re Irma Rodriguez, 2:16-bk-14835-WB, In re Morales, 16-41638 and In re Daniel Soto, 2:16-bk-23744-NB. An "in rem" order concerning the Property was entered in the Soto case January 17, 2017, which order terminates the stay in all cases concerning the Property commenced within two years of the entry of the order. *See ¶ 8 of Crandall Decl.*

9. As set forth below, Movant recently became aware that: (i) Jayne Margaret Carney, was a chapter 13 debtor (the "Debtor"), having filed a chapter 13 petition on October 25, 2013 (the "Case"), and (ii) Debtor asserts a right to reside in the Property. The Prior Owner also resided in the Property. *See ¶ 9 of Crandall Decl.*

61295139v1

PRINTED ON RECYCLED PAPER

Jeffer Mangels Butler & Mitchell LLP

Case: 13-45872    Doc# 42    Filed: 09/13/17    Entered: 09/13/17 16:19:51    Page 2 of 8

10. At no time has Debtor had any ownership interest of record in the Property and Debtor claimed no such interest in the Case. *See ¶* 10 of Crandall Decl.

11. A review of the Court's PACER docket reflects that Debtor confirmed a chapter 13 plan on December 11, 2013, which chapter 13 plan was subsequently modified. *See ¶* 11 of Crandall Decl.

12. Prior to becoming aware of the Case and Debtor's assertion of a right to reside in the Property, on March 7, 2017, Duke caused to be served a *Notice to Quit After Foreclosure.* *See ¶* 12 of Crandall Decl.

13. Prior to becoming aware of the Case and Debtor's assertion of a right to reside in the Property, Duke filed its *Complaint for Unlawful Detainer* against the Prior Owner (the "Action"). *See ¶* 13 of Crandall Decl.

14. Prior to becoming aware of the Case and Debtor's assertion of a right to reside in the Property, on March 22, 2017, Duke caused to be served a *Prejudgment Claim of Right to Possession* pursuant to CCP § 415.46 (the "Pre-Right"). The Pre-Right was also posted on the Property and mailed to "All Occupants Claiming Possession Pursuant to 415.46." *See ¶* 14 of Crandall Decl.

15. Debtor did not file a claim of right of possession as allowed by California law. *See ¶* 15 of Crandall Decl.

16. Prior to becoming aware of the Case and Debtor's assertion of a right to reside in the Property, Duke filed a *Motion for Summary Judgment* in the Action, which motion was granted by the Superior Court and a *Writ of Possession* was issued by the Superior Court on July 3, 2017. *See ¶* 16 of Crandall Decl.

17. Prior to becoming aware of the Case and Debtor's assertion of a right to reside in the Property, the Sheriff of Alameda County executed the writ of possession on August 16, 2017. Debtor did not claim any right to possession at that time. *See ¶* 17 of Crandall Decl.

18. On August 16, 2017, after possession of the Property had been given over to Duke by the Sheriff, Duke was contacted by Debtor who claimed to reside in the Property. Debtor did not advise Duke of her pending chapter 13 case at that time. Prior to that time, Duke was not aware

61295139v1

of any persons claiming any right to possession in the Property other than the Prior Owner. Debtor was thereafter given access to the Property at her request to remove her personal property. *See ¶* 18 of Crandall Decl.

19. On August 23, 2017, prior counsel for Debtor contacted Duke's State Court counsel and advised Duke for the first time that Debtor had a chapter 13 case pending before this Court. Possession of the Property was not demanded at that time and the parties commenced negotiations to resolve any issues between them. *See ¶* 19 of Crandall Decl.

20. On August 25, 2017, at approximately 11:56 a.m., Debtor, through counsel, demanded that she be given possession of the Property, based upon the automatic stay. *See ¶* 20 of Crandall Decl.

21. At approximately 2:40 p.m. on August 25, 2017, Debtor was provided a key to and possession of the Property. *See ¶* 21 of Crandall Decl.

22. On August 28, 2017, Debtor agreed to settlement of all issues between the parties, which settlement included annulment of the automatic stay. Debtor was sent settlement documentation on August 29, 2017. Debtor's prior counsel informed Duke that he was reviewing the settlement terms with Debtor. Without explanation, Debtor reneged on the settlement on September 7, 2017, necessitating this motion to annul the stay. *See ¶* 22 of Crandall Decl.

23. As set forth above, Duke acquired title to the Property in January 2017. Under California law, Debtor owes Duke holdover damages from February 2017, or if she is a *bona fide* tenant, she owes Duke rent from February 2017 forward. Notwithstanding, Debtor has not paid any amount to Duke, continuing through the date of this declaration. Debtor did not offer to pay any rent until September 7, 2017 after she retained new counsel and reneged on the settlement agreement. At this point, Duke will not accept any payment from Debtor until her claim to possession is finally determined.

24. Pursuant to the Motion, Movant requests entry of an order (i) annulling the automatic stay so that the stay which arose upon the filing of the Case in 2013 does not affect the relief obtain by Duke in the Action and to otherwise allow Movant to take any and all steps permitted under applicable state law to re-obtain possession of the Property, or alternatively, for relief from the

61295139v1

PRINTED ON RECYCLED PAPER

automatic stay, and (ii) waiving the 14-day stay prescribed by FRBP 4001(a)(3).

**"Cause" for Annulling the Stay**

25. Under 11 U.S.C. § 362(d)(1), a party may seek relief from the automatic stay for "cause." Cause for lifting and/or annulling the automatic stay has no clear definition and is determined on a case-by-case basis. *See In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir. 1990). The term "for cause" is construed broadly. *See In re Garber,* 221 F.3d 1347 (9th Cir. 2000). Courts have commonly held that a finding that the bankruptcy case was commenced in bad faith is "cause" for lifting and/or annulling the automatic stay. *See In re Duvar Apt., Inc.,* 205 B.R. 196 (9th Cir. BAP 1996).

26. Movant submits that the foregoing facts establish cause to annul the automatic stay. As set forth above, the Property has nothing to do with the Case and Debtor failed to advise Duke about the Case until well after the events described in paragraph 4 and paragraphs 12 through 18 above. Under the circumstances, Debtor's reliance on the automatic stay as a basis to remain in possession of a portion of the Property is opportunistic at best.

**Annulment of the Stay**

27. The Court may grant retroactive relief from the automatic stay under section 362(d). *In re Fjelsted,* 293 B.R. 12, 21 (B.A.P. 9th Cir. 2003). Postpetition actions taken after the stay goes into effect may be validated by annulment of the stay. *In re Williams,* 323 B.R. 691, 699-700 (B.A.P. 9th Cir. 2005). Determining whether to annul the stay requires the Court to balance the equities. *In re Fjelsted,* 293 B.R. at 24. The 9th Circuit BAP has suggested that bankruptcy courts consider the following factors, but emphasizes that in any given case, one factor may be dispositive: (1) the number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a *bona fide* purchaser; (4) the debtor's overall good faith (totality of circumstances test); (5) whether creditors knew of the stay but nonetheless took action, thus compounding the problem; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the *status quo ante;* (8) the costs of annulment to debtor and creditors; (9) how quickly

PRINTED ON RECYCLED PAPER

61295139v1

Case: 13-45872    Doc# 42    Filed: 09/13/17    Entered: 09/13/17 16:19:51    Page 5 of 8

creditors moved for annulment, or how quickly debtor moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to obtain relief; (11) whether annulment of the stay will cause irreparable harm to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. *Id.* at 24-25.

28. **Number of filings**. It appears that the Case is Debtor's only bankruptcy case. Notwithstanding, as set forth above, the Prior Owner had multiple bankruptcy filings and undertook questionable transfers regarding the Property.

29. **Whether the circumstances indicate an intention to delay and hinder creditors**. As set forth above, the Prior Owner has sought, over a substantial period of time, to hinder and delay Movant and its predecessor in interest. Under the circumstances, Duke submits that it can be inferred that Debtor is also now seeking to hinder and delay Duke, without legal justification or excuse.

30. **Debtor's overall good faith based upon a totality of the circumstances**. For the reasons set forth above, Movant submits that the totality of the circumstances is clear that this Debtor has no interest in the Property and the Prior Owner is not proceeding in good faith. On the other hand, Duke is a *bona fide* purchaser for value of the Property and had no notice of Debtor's claimed interest in the Property until August 16, 2017 and no notice of the Case until August 23, 2017.

31. **Whether creditors knew of the stay but nonetheless took action**. As set forth above, the trustee under the deed of trust was not aware of the Case and Duke did not learn of the Case until well after the events described in paragraph 4 and paragraphs 12 through 19 above.

32. **Whether the debtor has complied or is otherwise complying with the Bankruptcy Code and Rules**. Duke has no knowledge of whether or not Debtor is complying with the Bankruptcy Code and Bankruptcy Rules.

33. **The relative ease of restoring parties to the *status quo ante*; and the costs of annulment to the Debtor and creditors**. Annulment of the stay will result in no cost to the Debtor or this estate as neither has any interest in the Property, other than Debtor's bare assertion of a right

61295139v1

to occupy the Property. Debtor's belated actions have caused Movant damages as it is presently unable to take possession of the Property it rightfully owns and Movant is being forced to incur significant fees and costs to remedy this situation. Debtor has not paid holdover damages or rent to Duke after February 2017 as required by California law, which sums, if now tendered, will not be accepted by Duke until Debtor's claim to possession is finally determined.

34. **How quickly creditors moved for annulment, or how quickly debtor moved to set aside the sale; and whether, after learning of the stay, creditors took further actions in violation of the stay or moved expeditiously to obtain relief from the stay**. As set forth above, Movant put Debtor back into possession immediately after being informed of the Case. Thereafter, Debtor led Movant to believe, up until September 7, 2017 that she would stipulate to annul the stay as part of a comprehensive settlement, subject to Bankruptcy Court approval. Duke filed the motion within six days of being advised by Debtor that she would not go forward with the settlement.

35. **Whether annulment of the stay will cause irreparable injury to the debtor**. Movant submits that, on the facts presented, annulment of the stay will not cause any irreparable injury to the Debtor. Debtor has no material interest in the Property. Debtor will need to obtain a new rental. Debtor will have sufficient time to do that.

36. **Whether stay relief will promote judicial economy or other efficiencies**. Movant submits that, based upon the Debtor having no interest in the Property and the Prior Owner's clear bad faith, maintenance of the automatic stay is an abuse of the legal process. Moreover, if the stay is not annulled, Movant will have commence another State Court action to obtain possession of the Property, when it is clear that Debtor has no ongoing unlimited right to possession of any portion of the Property. Annulment of the stay under the circumstances presented promotes judicial economy and by not causing the Movant to expend additional attorneys' fees and costs unnecessarily in this Court or the State Court.

37. Movant submits that, based upon the foregoing, the automatic stay in this case should be annulled.

38. In the alternative, if the Court does not annul the stay, cause exists to grant Movant relief from stay pursuant to 11 U.S.C. sections 362(d)(1) based on the facts set forth above.

61295139v1

**RELIEF REQUESTED**

39. Pursuant to the Motion, Movant requests entry of an order providing the following relief:

    (i) As to Duke, its predecessors, successors, transferees and assigns, the automatic stay imposed by 11 U.S.C. § 362(a) be annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Duke or its predecessors, successors, transferees and assigns to enforce its remedies to foreclose on the Property and obtain possession of the Property in accordance with applicable nonbankruptcy law do not constitute a violation of the stay; or

    (ii) Terminating the automatic stay imposed by 11 U.S.C. § 362(a) so that Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to complete enforcement remedies to obtain possession of the Property;

    (iii) Any co-debtor stay of 11 U.S.C. § 1301(a) be annulled as to any co-debtor, as to the same terms and conditions as to the Debtor; and

    (iv) Waiving the 14-day stay prescribed by FRBP 4001(a)(3).

**CONCLUSION**

The issues between Movant and Debtor concerning possession of the Property are State law issues and Debtor may assert her rights in State court. Under the facts and circumstances set forth above, Movant submits that the automatic does not provide any right to possession, and should not alter the relationship of the parties. Movant prays for relief in accordance with the foregoing, that the stay be annulled for all purposes, and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED: September 13, 2017    JEFFER MANGELS BUTLER & MITCHELL LLP

By: */s/ David M. Poitras*
DAVID M. POITRAS, APC
Attorneys for Moving Party, Duke Partners II, LLC

61295139v1